## BUTMAN & al. vs. HUSSEY.

Where one wrongfully diverted water from the plaintiff's mill, the latter being the lawful owner of the stream, such wrongdoer was held to be answerable in *nominal damages*, though *no actual injury* to the plaintiff's mill resulted from the act complained of.

THIS was an action on the case for diverting water from the plaintiff's mill, and was tried upon the general issue, before *Parris J.*, at the last *October term* in this county.

On trial it appeared, that the plaintiff was the owner of a saw mill on one side of *Martin stream ;* and that the defendant was the owner of a grist mill on the other side of the same stream, with a common dam to raise a head of water for the use of both mills. Both parties derived title from *Isaiah Thomas.* The first conveyance was from *Thomas* to one *Means*, the defendant's grantor, and was of a grist mill and " also the privilege of using and improving water from the mill pond above said mill dam for the use of the grist mill forever ; said grist mill to draw water from said mill pond in preference to any other mill or machinery now erected, or which may be hereafter erected, taking water from said mill pond." The grist mill, conveyed by *Thomas*, had been altered and the floom extended in width by the defendant's grantor — and the defendant had also made alterations by inserting an additional set of stones, and a cleanser, and in several other particulars.

The plaintiff introduced evidence, tending to show that the defendant, in consequence of alterations made by himself, had withdrawn from the dam more water than he was entitled to.

He also introduced evidence (the defendant's counsel object-
ing,) tending to show that the defendant had withdrawn from
the dam more water than he was entitled to by reason of the en-
largement of the flume and other alterations made by *Means*, the
defendant's grantor, — more water being expended in propelling
the mill than was required for the use of the mill conveyed by
*Thomas*.

Upon the question of damages, the Judge instructed the jury,
that if they should find that the defendant had withdrawn from
the pond, water belonging to the plaintiff and necessary for pro-
pelling his mill, he was entitled to nominal damages, even if he
had failed to prove actual damages ; and if he had proved actual
damages, he would be entitled to their verdict for that amount.
But if they found that the defendant had withdrawn no more wa-
ter than he was entitled to, their verdict should be for him.    The
jury returned a verdict for the plaintiff for nominal damages only.
And such judgment, it was agreed, should be rendered, as in the
opinion of the whole Court, would be proper upon the facts re-
ported.

*W. P. Fessenden*, for the defendant, contended that no other
right could be acquired in flowing water than such as was acquir-
ed for some beneficial purpose by actual appropriation; and con-
sequently, that no action could be maintained for any appropria-
tion of that water which did not injure the exercise of that right
— and cited *Williams* v. *Morland*, 2 *Barn. & Cres.* 910;
*Blanchard & al.* v. *Baker*, 7 *Greenl.* 253.    And though a con-
trary opinion seems to be intimated by *Angell* in his *Treatise* on
*Watercourses*, p. 17, yet it will be found on examination that his
opinion is not supported by the cases which he cites.

2. The verdict does not find whether the diversion of the wa-
ter was caused by the erections of the defendant himself or of
*Means*, his grantor.    If the evidence therefore as to the latter
was inadmissible the verdict should not stand.    That it was not,
he cited 3 *Stark.* 1527, 1531, 1563, 1564, 1583 ; 1 *Chitt. Pl.*
380 ; *Doane* v. *Badger*, 12 *Mass.* 65 ; *Bull. N. P.* 232 ; *Bax-
ter* v. *M. I. Co.* 6 *Mass.* 207 ; *Robinson* v. *Jones* 8 *Mass.* 536 ;
*Smith* v. *Whitney*, 4 *Mass.* 445 ; *Larned* v. *Buffington*, 3 *Mass.*
552 ; *Langdon* v. *Potter*, 11 *Mass.* 313.

*F. Allen*, for the plaintiffs, cited the following authorities : *Rich* v. *Penfield*, 1 *Wend.* 380 ; *Whittemore* v. *Cutter*, 1 *Gall.* 476 ; *Hatch* v. *Dwight*, 17 *Mass.* 289.

Weston C. J. — *Isaiah Thomas*, under whom both parties claim, was the owner of *Martin stream* on both sides.   He erected a dam across the stream, to create a reservoir and head of water, which might be turned to beneficial purposes.   On one side he had erected a saw mill, and on the other side a grist mill.   The power thus raised was more than these mills required.   But the unoccupied power, thus raised and appropriated, had a value, which was as much under the protection of the law, to the owner, as the banks through which the stream passed.   It was capable of propelling other mills, which the owner might erect, and which may have been within his contemplation, when he built the dam, or it might have been sold to others, for a valuable consideration.   If a stranger had inserted a flume in the dam, and had thus withdrawn a portion of the water, when called upon by the owner for this invasion of his rights, it would be no sufficient answer for him to prove, that the owner had still enough left to work his mills.

A riparian proprietor on one side, or above or below, may use the water, or avail himself of its momentum, and may for this purpose create a head of water ; provided he does not thereby impair the rights of other proprietors.   If he thereby injure or destroy a privilege previously appropriated, he may be held answerable, although the mill or mills, depending on such privilege, may be out of repair, have gone to decay, or been destroyed by flood or fire, unless the same has been abandoned by the owner. *Hatch* v. *Dwight et al.* 17 *Mass.* 289.   There an action was sustained for impairing a water power, the actual enjoyment of which by the owner had been sometime suspended.   It may admit of more question, whether an action could be maintained by the owner of a privilege, which had never been occupied, for the erection of a dam below, which may have impaired or destroyed its value.   There are authorities which sanction the doctrine, that the first occupant thereby acquires exclusive rights, which cannot

be affected by operations upon the stream above or below.   Of this opinion was *Parker C. J.*, by whom the opinion of the court was delivered, in the case before cited.   At a subsequent period, *Story J.*, in the case of *Tyler & al.* v. *Wilkinson & al.* 4 *Mason*, 397, after an elaborate view of the authorities in *England* and in this country, maintains the opinion that such exclusive right is not sustained by occupancy alone, for a period short of twenty years.   The weight of authority appears to be with *Mr. Justice Story ;* but the case before us does not require a decision of this point.   It is not the conflicting rights of proprietors, above or below, or upon opposite sides, that we are called upon to determine.

The question is, how far a party having no right of his own, can divert the water which the owner of the stream has already appropriated, provided enough is left for his immediate purposes, without being liable to the suit of the party injured.   Upon this point we cannot entertain the least doubt.   To suffer such an invasion of the rights of another, without redress, would be to put this species of property out of the protection of the law.   Several of the cases cited for the defendant, may maintain the position they were adduced to support, that a party, through whose land water passes, who has sustained no damage from the use of it by another, can maintain no action therefor.   We do not consider it necessary to go into a consideration of these cases, or to discuss the principles upon which they are founded, being satisfied that it is and must be a damage to a party, to abstract a water power, of which he is the owner, which he has raised and erected at his own expense, and which he is at liberty either to use or to sell.

The grist mill was sold to *Means,* under whom the defendant claims, with a restricted and qualified right as to the quantity of water which he might withdraw from the dam.   All that was not thus conveyed was reserved by the grantor, to whose interest the plaintiff has succeeded.   The grist mill being located on one side of the stream, and passing with the site by the deed, if there might have passed with it, by implication, the water to the thread of the stream, there is no room for such implication, where the right to the use of the water power is expressly limited by the deed.   It was a valuable right, sufficient for the use of the mill

conveyed, and to that extent the grantee was to have a preference over all other mills, depending on the same power. Beyond that he cannot be regarded as having any other right than a mere stranger. For any interference with the plaintiff's dam, or the water therein, beyond what was expressly secured to him, his deed furnished him no protection. And we are clearly of opinion, that the case made out for the plaintiffs entitle them to judgment on their verdict, provided there is no legal objection to the evidence upon which it was founded, in regard to the admissibility of a portion of which, a question was raised at the trial, and which has been pressed in argument.

The gravamen in the plaintiffs' writ is, that the defendant had withdrawn, and continued to withdraw, more water than he had a right to do. Whatever had a tendency to prove this fact, was competent evidence. Of this character was the proof that the flume had been extended, and other alterations made by the defendant's grantor, by means of which, together with other changes made by himself, more water was withdrawn from the dam than was necessary to propel the mill, when it was conveyed. There was no attempt to charge the defendant with what was done by his grantor, or with damages for the use of the water in his time, but to show that an excess was taken beyond the quantity conveyed, it was proved first, that the passage, through which the water passed, had been enlarged, and whether that was done before or after the defendant purchased, it did not affect or enlarge his right ; and that secondly, by extending the capacity of the mill, a greater water power was necessary to propel it. It does not appear to us that any evidence was received, which did not bear directly and substantially upon the issue to be tried. The jury were instructed that the defendant was answerable only for the excess of water, which he had withdrawn ; and they have found only nominal damages.

*Judgment on the verdict.*